DONALD J. CHAIRAMONTE *v.* JOHN R. MANSON, COMMISSIONER OF CORRECTION
(2798)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Argued December 3, 1985—decision released March 18, 1986

*Max F. Brunswick,* for the appellant (petitioner).

*Julia D. Dewey,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (respondent).

BIELUCH, J. This is an appeal from the trial court's denial of Donald J. Chairamonte's petition for a writ of habeas corpus. The writ, if granted, would have resulted in Chairamonte's release from the Connecticut Correctional Center at Somers. We conclude that the court did not err in denying that petition.

The facts are not in dispute. On the night of May 22, 1978, Lisa DeMattie, who had occasionally dated the petitioner, was walking on Beach Avenue in Milford when Chairamonte stopped his car and asked to speak with her. She refused to talk to him and ran across the street. He then got out of his car with a shotgun and fired it in her direction. He was also carrying a knife. She continued to run away, but he caught her. He then began kissing her, at the same time cutting her back with the knife. The petitioner then returned to his car and drove away. A police alert was issued after DeMattie reported the incident to them.

Officer Michael Hanlon of the Milford police recognized Chairamonte's car while on patrol duty that night and gave chase when the driver, Chairamonte, tried to elude him at a very high speed through Milford and into the next town, West Haven. When Chairamonte was finally stopped, he jumped out of the car and fired his shotgun through the cruiser's windshield, narrowly missing the officer. After a brief foot chase, Chairamonte was apprehended and arrested on two counts of attempted first degree assault in violation of General Statutes §§ 53a-49 (a) (1) and 53a-59 (a) (1). A similar third count was added shortly before trial on September 12, 1979.

On June 6, 1978, Attorney John Williams filed an appearance on behalf of Chairamonte. Counsel obtained a psychiatric evaluation of the defendant's competence to stand trial pursuant to General Statutes (Rev. to 1977) § 54-40 (now § 54-56d). Chairamonte was found

to be competent to stand trial since he could understand the proceedings against him and was able to assist in his defense. Pursuant to Practice Book, 1963, § 2169 (now Practice Book § 758), counsel also filed a notice that Chairamonte "may rely upon the defense of mental disease or defect . . . ." At Chairamonte's request, this defense was not pursued at trial, contrary to the written recommendation of Williams that this was "the strongest possible defense in your case."

On September 10, 1979, Attorney Sue L. Wise, a partner of Attorney Williams, filed her appearance for Chairamonte. On that day, she appeared before the presiding judge, *Kinney, J.,* to request permission to try the case in place of Williams who was involved in a protracted trial in Waterbury. Permission was granted and, on the next day, Wise appeared before the trial judge, *Foti, J.,* seeking severance of the third count of the information and another competency evaluation pursuant to § 54-40. Both of these motions were denied. Later in the day, Wise was informed that jury selection would commence on the following day.

On September 12, 1979, Wise moved for a continuance "of at least a week" for further preparation of the case. That request was denied, but the court delayed the trial by ordering jury selection to commence on the following day, and further ordered that jury selection would take place only during morning hours to allow Wise to be free in the afternoon for additional trial preparation. The jury was selected and sworn in on September 25, 1979, after which the court adjourned until the following day for the commencement of trial. Sixteen days had elapsed between Wise's appearance and the commencement of trial.

On October 4, 1979, the jury found Chairamonte guilty on all three counts of attempted first degree assault, after which he was sentenced to a term of imprison-

ment. Chairamonte appealed from the judgment of guilty to the Supreme Court; *State* v. *Chairamonte,* 189 Conn. 61, 454 A.2d 272 (1983); claiming that his sixth amendment right to effective assistance of counsel was denied because (1) his privately retained attorney did not adequately prepare or present an insanity defense, and (2) the trial court forced him to go to trial represented by an attorney other than the one he had already retained, and that second attorney was totally unprepared to try the case. The court found no error. In its opinion, the court noted that the petitioner's claims, which were identical to those presented in the habeas corpus proceeding here, could not adequately be reviewed on the basis of the appellate record. Id., 64. The court stated that "[w]ithout a hearing in which the reasons for counsel's decision may be elicited, any decision of ours on this claim would be entirely speculative." Id. Thus, the court concluded, the issues claimed on appeal were more appropriately pursued on a petition for new trial or on a petition for a writ of habeas corpus, rather than on direct appeal. Id., 64–65. Hence, the present petition was filed.[1]

By this petition, Chairamonte claimed: (1) that his pretrial and trial counsel did not adequately prepare or present a defense based on insanity or diminished mental capacity as affecting the issue of intent; and (2) the trial court forced him to go to trial represented by an attorney other than the one he retained, and who was totally unprepared to try the case. The court below rejected these claims and Chairamonte has appealed, raising these same claims before this court. We find no error.

[1] We note that the petitioner's prior direct appeal was made necessary by the "deliberate bypass" rule, which has since been eviscerated. *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480 (1986). See also *State* v. *Rivera,* 196 Conn. 567, 571, 494 A.2d 570 (1985); *Miller* v. *Angliker,* 4 Conn. App. 406, 417, 494 A.2d 1226, cert. denied, 197 Conn. 807, 499 A.2d 59 (1985).

Chairamonte's first claim of error specifically briefed is that Williams and Wise provided him with ineffective assistance of counsel because they failed to pursue a defense of diminished capacity until the eve of trial, when Wise first discussed such a defense with him. This argument presupposes that such a failure somehow detrimentally affected the presentation of that defense. The record does not support that claim.

Before trial, the petitioner and Wise discussed a defense based on diminished capacity as affecting the issue of intent. A psychiatrist, Dr. Peter Kramer, was employed as a defense witness. The habeas court found that there was no evidence that a mental test was scheduled, or that a continuance of the trial for a test to be conducted immediately, was ever requested. The psychiatrist did not testify at the habeas corpus proceeding. The part Dr. Kramer played in the formulation and presentation of this defense was related by the testimony of Wise. In its memorandum of decision, the trial court observed: "Counsel had spent a lot of time consulting with the doctor before his testimony. She did what she could and more with an expert witness who just would not give a reasonable medical opinion." This finding was based on the testimony of Wise that "when we were talking and preparing for his testimony, he was much stronger in his opinion than when he was on the stand." The court's concise conclusion therefrom was that this was "not incompetence but rather one of the ordinary problems of trial." There was no evidence presented by the petitioner in the hearing below from which the court could have found that the relatively short period of time between the decision to use a diminished capacity defense and Dr. Kramer's nonconclusory testimony was the cause of his lack of a reasonable medical opinion on the defense offered. Notwithstanding any pretrial indication or preview of testimony by a witness, there is no guarantee

or certainty of the testimony under oath on the witness stand. The witness is properly guided by his knowledge and conscience. It is for this reason that witnesses are administered an oath. The trial court called the unpredictable testimony of a witness, an expert witness in this case, "one of the ordinary problems of trial." More aptly stated, "it is one of the inherent risks of trial."

Chairamonte had the burden of proving that the conduct of Williams and Wise fell below the standard of conduct required of counsel. *Levine* v. *Manson,* 195 Conn. 636, 490 A.2d 82 (1985). That standard is whether "counsel's performance was 'reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law.' *State* v. *Clark,* 170 Conn. 273, 283, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), quoting *Gentry* v. *Warden,* 167 Conn. 639, 646, 356 A.2d 902 (1975)." *Miller* v. *Angliker,* 4 Conn. App. 406, 419, 494 A.2d 1226, cert. denied, 197 Conn. 809, 499 A.2d 59 (1985). Chairamonte was also required to prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984); *Miller* v. *Angliker,* supra.

We conclude that the trial court correctly assessed Wise's difficulty in establishing her medical claim through Dr. Kramer as "not incompetence but rather one of the ordinary problems of trial." Wise's efforts fell well within the bounds of reasonable competence. Further, the petitioner failed to establish that any "error" made by counsel, if rectified, was reasonably likely to have changed the result of the criminal trial.

Chairamonte's second claim is that the court erred in finding that he was not denied effective assistance of counsel when he was forced to go to trial represented by counsel other than the lawyer he retained, and when trial counsel was unprepared.[2] We conclude that the court did not err.

Chairamonte's argument is, essentially, that deprivation of counsel of choice constitutes ineffective assistance of counsel regardless of the competence of substituted trial counsel. Chairamonte has offered no evidence to prove that, had Williams represented him, the result of his trial might have been different. Nor, as we have already stated, has Chairamonte demonstrated that the quality of Wise's efforts was below an acceptable standard. Thus, the substitution of Wise for Williams cannot be said to have constituted ineffective assistance of counsel.

A review of the record discloses that Wise had extensive criminal and litigation experience at the time of her appearance in behalf of Chairamonte. At the habeas corpus hearing, she testified that she was given a sufficient amount of time in which to prepare a defense. She detailed for the court her trial preparation, some of which included extensive consultations with Williams. In addition to reviewing the trial file and notes, she consulted with three psychiatrists concerning the possibility of utilizing an insanity defense. In her opinion, none of these psychiatrists would have been effective as a defense witness. They could not testify that the petitioner was insane at the time of the crimes. Consequently, she attempted to utilize the testimony

---

[2] Our conclusion with regard to Chairamonte's first claim obviates the need for any further discussion of the argument that Wise was unprepared for trial. There is no evidence to contradict Wise's testimony recounting her extensive trial preparations. Wise further testified that there were no defense witnesses available other than Dr. Kramer and that she had "a sufficient period" during the presentation of the state's case in which to prepare Kramer for his testimony.

of Dr. Kramer, the psychiatrist who had examined Chairamonte pursuant to General Statutes § 54-40 at the outset of the criminal proceedings, to negate the element of specific intent in the charges confronting him. In that effort, she was unsuccessful in court.

Dr. Kramer could not form an opinion without "more testing to speak with more authority." Wise had no notice of this before the psychiatrist's testimony at the criminal trial. At the habeas corpus hearing, however, the court found that "[Dr. Kramer] had a great deal of exposure to the petitioner—9½ hours between September 17, 1979 and October 3, 1979 as well as the time of the competence exam which was 'several hours.' " The trial testimony of Dr. Kramer was not refuted at this hearing. He was not called to testify then and there was no evidence offered that the tests which he allegedly might have performed would in any way have changed his trial testimony.

Wise had sixteen days, except for twenty-seven hours spent in jury selection, to prepare the single defense chosen. She testified that she had the ability to defend the petitioner against the charges, and that she had adequate time to prepare the defense. Chairamonte did not refute her testimony. The court found her competent and also found that no action or inaction by her in any way harmed the petitioner or prejudiced his defense. The court below complimented the professional competence of Wise with these remarks: "She had established a very good working relationship with petitioner before and during the evidentiary trial. She is an experienced trier and her testimony and the transcript bear out that she has skills beyond those displayed by lawyers with ordinary training and skill in criminal law."

There is no error.

In this opinion the other judges concurred.