******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HENRIQUE
S. SOUSA
(AC 47169)

Alvord, Westbrook and DiPentima, Js.

*Syllabus*

Convicted, following a jury trial, of sexual assault in the first degree and risk of injury to a child in connection with his sexual abuse of the victim, the defendant appealed to this court. He claimed that the trial court abused its discretion in admitting into evidence certain photographs of a house, a yard, and the interior of a garage where the incident of abuse took place. *Held*:

The trial court did not abuse its discretion in admitting the challenged photographs, as the record did not support the defendant's claim that the photographs were more prejudicial than probative because they did not fairly and accurately depict the house, the yard and the garage when the incident was alleged to have occurred.

In light of the manner in which the photographs were handled at trial by the prosecutor and the witnesses, which made clear that they were making no claims that the photographs accurately depicted the relevant areas of the property during the pertinent years, this court could not conclude that the photographs presented any danger of misleading the jury, and the limiting instruction that the trial court provided immediately following the admission of the photographs, as well as its final instructions, lessened any potential prejudice from their admission.

Argued February 4—officially released June 16, 2026

*Procedural History*

Substitute information charging the defendant with the crime of sexual assault in the first degree and with two counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Waterbury, where the court, *Kwak, J.*, denied the defendant's motion in limine to preclude certain evidence; thereafter, the case was tried to the jury before *Kwak, J.*; verdict of guilty; subsequently, the court, *Kwak, J.*, vacated the defendant's conviction as to one count of risk of injury to a child and rendered judgment of guilty of sexual assault in the first degree and risk of injury to a child, from which the defendant appealed to this court. *Affirmed.*

*John Raad*, for the appellant (defendant).

*Christopher A. Alexy*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's

attorney, and *Stephen J. Sedensky III*, former state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Henrique S. Sousa, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). On appeal, the defendant claims that the trial court abused its discretion in admitting certain photographs into evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Beginning when the victim, L,[1] was six months old, his mother's friend, S, babysat him during the day while his mother was at work. From 2010 to 2013, when L was between the ages of three and six years old, S watched him before and after school. The defendant, who is the son of one of S's friends, was occasionally at S's house while L was present. The defendant was between the ages of sixteen and nineteen years old during this time.

On one occasion, when L was five or six years old, he was playing with S's daughter, E, in the backyard of S's house after school. L and E were "play fight[ing]" on the trampoline when L hit E too hard with a pool toy. E told the defendant, who was in the backyard at that time, about L's hitting her. The defendant took L into the garage at the back of the house, where they were alone.[2] The defendant reprimanded L and told him not to hit E again. The defendant then sat in a chair inside the garage and pulled his pants down. The defendant made L perform oral sex on him until he ejaculated in L's mouth. Afterward, they both left the garage and "continued on

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] At trial, L testified that S was inside the house and that he did not remember if E was still playing outside on the trampoline or if she had gone inside.

with the day like normal." L, who did not understand what had happened, did not tell anyone at that time.

S continued to babysit L, on and off, until February or March 2017. On June 8, 2017, when L was ten years old, he disclosed the incident involving the defendant to his mother. She reported the incident to the police. The defendant was arrested shortly thereafter and charged with sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (1) and (2).

The defendant's trial took place in 2023. At trial, the state presented testimony from several witnesses, including L, L's mother, S, and E.[3] In addition, the state introduced into evidence, among other things, several photographs of S's house, including photographs of the backyard and the garage where the incident took place. The defense presented testimony from the defendant and two character witnesses who spoke in support of the defendant.

At the conclusion of trial, the jury found the defendant guilty on all counts.[4] The court imposed a total effective sentence of twenty-five years of incarceration, execution suspended after fifteen years, followed by thirty years of probation. This appeal followed.

On appeal, the defendant claims that the court improperly admitted certain photographs of S's house. Specifically, he contends that photographs of the driveway, backyard and garage, marked as exhibits 11 through 19,

[3] The state also presented testimony from Donna Meyer, a licensed professional counselor who conducted a forensic interview of L; Diane Fountas, a pediatrician who conducted a physical examination of L; Jason Krauter and Kimberly Binette, members of the Waterbury Police Department; Tara Fitch, a social worker with the Department of Children and Families; and Lisa Murphy-Cipolla, a clinical services coordinator at the Greater Hartford Family Advocacy Center who testified about delayed disclosure.

[4] Prior to sentencing, the defendant filed a motion for a judgment of acquittal with respect to the count of risk of injury to a child in violation of § 53-21 (a) (2). The court granted the motion after the state raised no objection and vacated the conviction on that count.

were more prejudicial than probative because they did not fairly and accurately depict the location as it appeared in 2010 to 2013, when the incident was alleged to have occurred. We are not persuaded.

Prior to trial, the defendant filed a motion in limine to preclude the state from introducing certain photographs into evidence at trial. The defendant argued in relevant part that photographs of S's house, which were taken in July 2023, "do not show the condition of the house in 2010 to 2013 when the incident is alleged to have occurred. The police report and witness statements mention a trampoline which is not in any of the photographs. There is also a garage depicted in some of the pictures with its door opened, showing its interior, which could not possibly be the same as in 2010 to 2013 between ten to thirteen years ago."

The state filed an objection to the defendant's motion in limine, arguing in relevant part: "These photographs are relevant because they depict the crime scene, specifically the garage where the sexual assault occurred. The witnesses will be able to testify that the exterior of the home, the location of the garage, the driveway, the backyard and the deck are a fair and accurate representation of how the house looked between the years of 2010 and 2013. . . . The state is not claiming any item within the picture, only the location of the home as it relates to the garage, driveway, backyard and deck. Additionally, any confusion the jury might have about this can easily be remedied by a limiting instruction." The state added that witnesses would testify at trial about when the trampoline was removed from the yard and where the trampoline was located when the assault occurred, referencing a photograph of the general location of the backyard when doing so. The state explained that "[t]his information is relevant as it will make material facts more probable—specifically, that the minor victim was jumping on a trampoline that was nearby moments before

the defendant asked him to come into the garage and perform oral sex on him."

On August 28, 2023, immediately prior to the start of evidence, the court held a hearing on the defendant's motion in limine. The prosecutor explained that the state intended to offer into evidence eleven photographs of S's house, which were marked for identification as exhibits 9 through 19. The defendant clarified that he had no objection to exhibits 9 and 10, which depict the front of S's house.

With respect to exhibit 11, which depicts a driveway along the side of S's house leading into the backyard, defense counsel argued that "the problem with this is that there is a trampoline that is alleged to have existed between 2010 and 2013 in the back of the house. And, if that trampoline is not in this picture now, this picture can't be a fair and accurate description of what existed ten years ago, essentially, as this house." Defense counsel objected to exhibits 12 and 13, which depict the backyard of S's house, on the same basis. The prosecutor responded: "[W]hether or not the trampoline is there, that can be handled with testimony. We are offering it for what the backyard looks like. . . . And then people can testify with regard to where the trampoline was located."

With respect to exhibits 14, 15, 16, 18 and 19,[5] which depict the garage with its door open at the back of S's house, defense counsel objected on the basis that they "[show] that there are some things inside of the garage" that may not have been there between 2010 and 2013.[6] Defense counsel explained that his objection went not only to whether the photographs were fair and accurate,

---

[5] Defense counsel initially stated that he had no objection to exhibit 17, which depicts part of the backyard of S's house, including a tent over a sitting area. As explained subsequently in this opinion, however, defense counsel objected to exhibit 17 at trial, along with the photographs of the garage, on the basis that those photographs did not provide a fair and accurate representation of what the property looked like ten years earlier.

[6] The photographs depict various miscellaneous household items inside the garage, such as tools and cleaning supplies.

but to whether they were unduly prejudicial. Specifically, he argued that "a lot of it . . . is . . . prejudicial in the sense that what does it prove to show items located inside of a garage when that could be prejudicial to the defendant's case if those same exact items weren't there ten years ago and the argument could be that the defendant might have been hiding behind something in the garage because there is so much area there to hide behind in allegedly committing this act."

The court denied the defendant's motion, explaining: "[T]he court finds that these pictures would be more probative and more helpful to the jury than prejudicial to the defendant. I don't see anything in here, in these pictures, that would cause any prejudice to the defendant. Obviously, the house and inside the garage, as well as the backyard, the state has already admitted that it's not the same condition as it was back in 2010 and 2013. However, I can give a limiting instruction to the jury that the scene is different, and this is only being presented for the house as well as the garage. The location of the garage particularly, I believe the jury will find that more helpful. So, the motion to preclude as to those pictures is denied."

At trial, the state offered the photographs as full exhibits during testimony from L's mother. After the prosecutor showed L's mother exhibits 9 through 19, the following colloquy took place:

"[The Prosecutor]: . . . Do those photographs fairly and accurately depict [S's house]?

"[L's mother]: Yes.

"[The Prosecutor]: The house, the yard, the deck, okay, including the garage itself as it existed back from 2010 to 2013?

"[L's mother]: Yes.

"[The Prosecutor]: Now, you understand I'm not talking about any decorations or contents of the garage, or anything like that?

"[L's mother]: Yes."

Defense counsel then conducted a voir dire examination of L's mother. She acknowledged that the trampoline was missing in the photographs of the backyard. She also indicated that she could not testify that the items visible inside the garage were the same as they were ten years ago.

At the conclusion of his voir dire examination, defense counsel objected to the admission of the photographs marked as exhibits 11 through 19 "on the basis that they are not fair and accurate representations of what things looked like ten years ago." The prosecutor again stated: "[W]e make no claim as to contents of the garage or removable items. Our claim is as to the house itself and the backyard, and the deck."

The court overruled the defendant's objection and gave the following instruction to the jury: "The state is introducing these pictures only for the purpose of showing [S's house] and the general layout of the property. And . . . what you are about to see depicts [S's] home . . . . . Any items that you see or don't see in the picture as indicated by [defense counsel], they are of no importance. So, you are only to look at these exhibits from 9 to 19 for the general layout of the house and the property. Anything else you see in there, you are to disregard it."

Both the prosecutor and defense counsel referred to the photographs throughout the remainder of trial during their examination of the witnesses. The witnesses used the photographs to explain the general layout of S's property, and, in doing so, they described the differences between the way S's backyard and garage appeared in 2010 to 2013 compared to the photographs taken in 2023.

At the conclusion of trial, the court's instructions to the jury included a charge on evidence admitted for a limited purpose. The court stated: "[D]uring the testimony of [L's mother], I permitted the introduction of the photos of the house marked as state's exhibits 9 through 19 and instructed that the miscellaneous items . . . [in] the house and yard and inside the garage, were not to be

considered by you in deliberation. These exhibits were only introduced for the purposes of acquainting you with the general layout of the residence and for you to use as evidence to the extent that you find it should be given any weight. Any other use of that testimony will be improper.''

The following legal principles guide our analysis of the defendant's claim on appeal. ''Photographic evidence is admissible if it has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. . . . Verification of a photograph is a preliminary question of fact to be determined by the trial court. . . . Whether a photograph shows a situation with sufficient accuracy to render it admissible, is a preliminary question for the court . . . .'' (Internal quotation marks omitted.) *State* v. *Emmanuel C.*, 233 Conn. App. 156, 177, 338 A.3d 1177 (2025); see *State* v. *Swinton*, 268 Conn. 781, 802, 847 A.2d 921 (2004) (''[u]nder [the foundational] standard [for photographs], all that is required is that a photograph be introduced through a witness competent to verify it as a fair and accurate representation of what it depicts'').

Photographic evidence, even if relevant, ''may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.'' Conn. Code Evid. §4-3; see also *State* v. *Best*, 337 Conn. 312, 322, 253 A.3d 458 (2020).

''[A] trial court has broad discretion in weighing the potential prejudicial effect of a photograph against its probative value. . . . On appeal, we may not disturb . . . [the trial court's] finding absent a clear abuse of discretion. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted.''

(Citation omitted; internal quotation marks omitted.) *State* v. *Best*, supra, 337 Conn. 322; see also *State* v. *Emmanuel C.*, supra, 233 Conn. App. 177 ("the trial court has wide discretion in admitting photographic evidence and its determination will stand unless there has been a clear abuse of that discretion" (internal quotation marks omitted)).

In the present case, the defendant contends that the photographs were more prejudicial than probative because they did not fairly and accurately depict what S's house looked like from 2010 to 2013, when the incident was alleged to have occurred. He argues that the photographs were misleading insofar as they enabled L to create a false impression that the defendant could have concealed his actions by hiding behind the various items in the garage that were not there at the time that the incident was alleged to have occurred.

We conclude that this claim is not supported by the record. L did not testify, and the state did not argue,[7] that the defendant was able to conceal his actions by hiding behind the items in the garage. L, instead, acknowledged that the items shown in the photographs of the garage were not there at the time of the incident.[8]

Testimony from S and L's mother similarly made clear that the contents of the garage depicted in the

[7]The prosecutor referred to an item in a photograph of the garage only to provide a point of reference during L's testimony about where the incident took place. Although the defendant takes issue with this reference, he does not explain how it presented any danger of misleading the jury. The prosecutor made clear that L was discussing the location of the chair that the defendant was sitting on during the incident. The prosecutor did not suggest that the item in the photograph was there at the time of the incident or that it played any role in concealing the defendant's actions.

[8]On cross-examination, the following colloquy took place between L and defense counsel:

"[Defense Counsel]: . . . [Y]ou were asked by [the prosecutor] where the chair was that [the defendant] was sitting on, right? Is that right?

"[L]: Yes.

"[Defense Counsel]: *So, I just want to be clear, the items that are in that picture inside the garage, those weren't there back then, right?*

"[L]: *They were not. No.*

photographs were not the same as the contents in 2010 to 2013. When S was shown a photograph of the back of her house, marked as exhibit 16, she explained that "there is more mess inside the garage" compared to how it looked in 2010 to 2013. When L's mother provided the requisite foundational testimony that the photographs fairly and accurately depicted S's house, the prosecutor clarified in the presence of the jury that he was not talking about the contents of the garage or any of the "removable items." L's mother testified that she could not confirm that the items inside the garage, as shown in the photographs, were the same as they appeared approximately ten years earlier. Considering the manner in which the photographs were handled at trial by the prosecutor and the witnesses, which made clear that they were making no claims that the photographs accurately depicted the interior of the garage during the years 2010 through 2013, we cannot conclude that the photographs presented any danger of misleading the jury.

Moreover, the limiting instruction that the court provided immediately following the admission of the photographs, as well as the court's final instructions, lessened any potential prejudice from the admission of this evidence. See *State* v. *Delacruz-Gomez*, 350 Conn. 19, 32–33, 323 A.3d 308 (2024); see also *State* v. *Patter*

---

"[Defense Counsel]: Okay. And, in fact, there was nothing hiding the chair that was inside the garage from the outside of the garage, correct?

"[L]: There was a little wall, I guess.

"[Defense Counsel]: Did the wall completely cover the chair?

"[L]: The chair, yes.

"[Defense Counsel]: And did the wall completely cover you and [the defendant]?

"[L]: I'm not sure. I wasn't outside so I wouldn't be able to know.

"[Defense Counsel]: So, it's possible that it didn't?

"[L]: Yes.

"[Defense Counsel]: It's possible that somebody walking by the garage could have seen both of you inside the garage?

"[L]: Yes.

"[Defense Counsel]: [E] could have seen both of you?

"[L]: Yes.

"[Defense Counsel]: [S] could have seen both of you?

"[L]: Yes.

"[Defense Counsel]: At any time?

"[L]: Yes." (Emphasis added.)

*son*, 344 Conn. 281, 301, 278 A.3d 1044 (2022) ("limiting instructions serve to minimize any prejudicial effect that . . . [such] evidence . . . otherwise may have had" (internal quotation marks omitted)).

The instructions emphasized that the photographs were being admitted only for the limited purpose of showing the general layout of S's house and property. The court told the jury to disregard the miscellaneous items contained therein, including inside the garage. We presume, without evidence to the contrary, that the jury followed these instructions. See, e.g., *State* v. *Sharpe*, 353 Conn. 564, 596–97, 343 A.3d 408 (2025), cert. denied,      U.S.     ,      S. Ct.     , 224 L. Ed. 2d 180 (2026); see also *State* v. *Emmanuel C.*, supra, 233 Conn. App. 178 (portions of photographs affected by lighting distortions were identified and jury was instructed to disregard them). Accordingly, we conclude that the court did not abuse its discretion in admitting into evidence the challenged photographs.

The judgment is affirmed.

In this opinion the other judges concurred.